CORWIN v DAIMLERCHRYSLER INSURANCE COMPANY

Docket No. 301931. Submitted March 16, 2012, at Detroit. Decided April 17, 2012, at 9:15 a.m.

John M. and Vera-Anne V. Corwin were injured in an automobile accident that occurred when the Jeep Compass they were in, which John leased from Chrysler LLC and insured through Daimler-Chrysler Insurance Company (Chrysler Insurance), was hit by a vehicle driven by Leslie Ann Jackson, an uninsured motorist. At the time of the accident, the Corwins also owned a Jeep Liberty that was insured by Auto Club Insurance Association under a no-fault policy that named John and Vera-Anne as named insureds. The Corwins also owned a motor home that was insured by Foremost Insurance Company under a no-fault policy that named John as the named insured. The insurance policy for the Jeep Compass named Chrysler LLC and its United States subsidiaries, rather than the Corwins, as the named insureds and it stated that Chrysler Insurance was not responsible for personal injury protection (PIP) benefits if the Corwins are entitled to PIP benefits as the named insured in another policy. After the accident, Auto Club provided PIP benefits to the Corwins. The Corwins and Auto Club brought an action in the Oakland Circuit Court against Chrysler Insurance, Chrysler LLC, Foremost, and Jackson, seeking a declaratory judgment regarding the insurers' obligations to pay PIP benefits, Auto Club's right to reimbursement, and the Corwins' right to uninsured-motorist coverage under the three insurance policies. The Corwins and Auto Club also pleaded a single count of negligence against Jackson. Chrysler Insurance and Chrysler LLC filed a counterclaim against the Corwins and Auto Club and moved for summary disposition, arguing that Auto Club and Foremost had coequal priority to pay the Corwins' PIP benefits because John was a named insured on both the Auto Club and the Foremost policies, but not on the Chrysler Insurance Policy. Chrysler Insurance also argued that the Corwins could not recover uninsured-motorist benefits from it because its policy did not provide such coverage. Auto Club and Foremost also moved for summary disposition, arguing that all three insurers shared liability for the Corwins' PIP benefits because the Corwins were the named insureds on the Auto Club and Foremost policies and the

Chrysler Insurance policy should be reformed by the court to name the Corwins as the named insureds because it improperly shifted Chrysler Insurance's statutory responsibility for the Corwins' PIP benefits to Auto Club and Foremost. The court, Martha D. Anderson, J., granted Chrysler Insurance's motion and denied the motion by Auto Club and Foremost in an opinion and order. The court held that Auto Club and Foremost were coequals in the highest order of priority to pay the Corwins' PIP benefits and that the Chrysler Insurance policy did not provide uninsured-motorist coverage for the Corwins. The court granted in part Auto Club's motion for reconsideration in order to amend its prior opinion and order to reflect that Auto Club's motion for summary disposition was granted in part to the extent that Auto Club and Foremost were coequals in the highest order of priority. Before a final order of judgment was entered, Auto Club and Foremost reached a settlement, agreeing that they were in the same order of priority and that Foremost would pay Auto Club $313,655.73 in settlement of the past and present PIP benefits that Auto Club had paid the Corwins. The court then entered an order of judgment, a partial consent judgment, in favor of Auto Club and against Foremost for $313,655.73 and dismissed with prejudice the Corwins' claims for uninsured-motorist benefits. The judgment noted that the Corwins, Auto Club, and Foremost preserved their continued objections to the summary disposition rulings and their right to appeal the issue regarding Chrysler Insurance's liability for PIP benefits. Auto Club appealed and Foremost cross-appealed.

The Court of Appeals *held*:

1. The Chrysler Insurance policy is invalid under the no-fault act and requires reformation because Chrysler LLC and its United States subsidiaries, the named insureds in the policy, do not have an insurable interest and the policy contravenes the legislative intent of the no-fault act by shifting primary liability for no-fault coverage. The policy must be reformed so that there is an insurable interest belonging to a named insured compatible with public policy.

2. The owner or registrant of a motor vehicle must provide residual liability insurance under the no-fault act. Under the no-fault act, John Corwin is the owner of the Jeep Compass because he leased it for more than 30 days, MCL 500.3101(2)(h)(*i*). John purchased no-fault insurance for the Jeep Compass through Chrysler Insurance and, thus, Chrysler Insurance provided no-fault insurance to the Corwin household and was the Corwins' personal insurer. Chrysler Insurance may not avoid the legislative intent that an injured person's personal insurer stand primarily

liable for PIP benefits. The Chrysler Insurance policy must be reformed so that Chrysler Insurance is primarily liable (along with Auto Club and Foremost) for PIP benefits in accordance with MCL 500.3114(1).

3. The Chrysler defendants stated that at the time of the collision the Corwins had a policy of insurance issued by Chrysler Insurance. The Chrysler Insurance policy must be reformed to include both John and Vera-Anne as named insureds who fall within the policy's definition of "you."

4. The liability of the three insurers for the Corwins' PIP benefits is governed by MCL 500.3114(1), which provides, in part, that a personal protection insurance policy applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. The statute further provides that when personal protection insurance benefits are payable to or for the benefit of an injured person under his or her own policy and would also be payable under the policy of his or her spouse, relative, or relative's spouse, the injured person's insurer shall pay all the benefits and is not entitled to recoupment from the other insurer. Auto Club, Foremost, and Chrysler Insurance are of equal priority for John's PIP benefits because John is a named insured on their policies. Because Vera-Anne is a named insured on only the Auto Club and Chrysler Insurance policies, Auto Club and Chrysler Insurance are primarily liable for her PIP benefits. PIP benefits are payable to Vera-Anne under her own Auto Club and Chrysler Insurance policies, and, although benefits would also be payable to her under her spouse's policy with Foremost, her insurers, Auto Club and Chrysler Insurance must pay all her PIP benefits pursuant to MCL 500.3114(1). The matter is remanded to the trial court to determine the amount of each insurer's liability and to order the appropriate reimbursement pursuant to MCL 500.3115(2).

Reversed and remanded.

1. Insurance — No-Fault — Words and Phrases — Owner.

The owner or registrant of a motor vehicle required to be registered in Michigan must maintain security for the payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance; an "owner" includes a person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days (MCL 500.3101[1] and [2][h]).

2. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE.

A personal protection insurance policy described in MCL 500.3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident; "the person named in the policy" is synonymous with the term "the named insured"; when personal protection insurance benefits are payable to or for the benefit of an injured person under his or her own policy and would also be payable under the policy of his or her spouse, relative, or relative's spouse, the injured person's insurer must pay all of the benefits and is not entitled to recoupment from the other insurer (MCL 500.3114[1]).

3. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS.

Personal injury protection coverage protects the person, not the motor vehicle; a person who sustains accidental bodily injury while an occupant of a motor vehicle must first look to no-fault insurance policies within the person's household for no-fault personal injury protection benefits; a no-fault insurance carrier can be responsible for personal injury protection benefits even if the motor vehicle it insures was not the actual motor vehicle involved in the accident (MCL 500.3101[1]; MCL 500.3114[1]).

4. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS — INSURERS IN SAME ORDER OF PRIORITY.

When two or more insurers are in the same order of priority to provide personal injury protection benefits an insurer paying benefits due is entitled to partial recoupment from the other insurers in the same order of priority (MCL 500.3115[2]).

5. INSURANCE — NO-FAULT — REFORMATION OF POLICIES.

Reformation of an insurance policy is an equitable remedy; when reasonably possible, courts are obligated to construe insurance contracts that conflict with the no-fault act, and therefore violate public policy, in a manner that renders them compatible with public policy as reflected in the act.

6. INSURANCE — NO-FAULT — INSURABLE INTERESTS.

An insured must have an insurable interest to support the existence of a valid motor vehicle liability insurance policy; the insurable interest must be that of a named insured; the insurable interest need not be in the nature of ownership and an individual can have an insurable interest without having title to the vehicle; an insurable interest can be any kind of benefit from the thing so

insured or any kind of loss that would be suffered by its damage or destruction; a person has an insurable interest in his or her own health and well-being and such interest entitles an insured person to personal protection benefits under the no-fault act regardless of whether a covered vehicle is involved.

7. INSURANCE — NO-FAULT — PUBLIC POLICY — MOTOR VEHICLES — INSURABLE INTERESTS.

Michigan's public policy forbids the issuance of an insurance policy where the insured lacks an insurable interest; owners and registrants have an insurable interest in their motor vehicles because the no-fault act requires them to carry no-fault insurance and makes it a misdemeanor to fail to do so; the insurable interest of owners and registrants is, therefore, contingent upon personal pecuniary damage created by the no-fault act (MCL 500.3102[2]).

8. INSURANCE — NO-FAULT — LESSEES — INSURABLE INTERESTS — WORDS AND PHRASES — OWNER — REGISTRANT.

A person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days is neither the owner nor registrant of the vehicle and does not have an insurable interest in the vehicle contingent upon personal pecuniary damage created by the no-fault act (MCL 500.3101[2][h][*ii*] and [i]).

*Hom, Killeen, Siefer, Arene & Hoehn* (by *Elaine I. Harding*) and *John A. Lydick* for Auto Club Insurance Association.

*Law Offices of Thomas R. Bieglecki P.C.* (by *Thomas R. Bieglecki*) for DaimlerChrysler Insurance Company.

*Cory & Associates* (by *Patrick W. Bennett*) for Foremost Insurance Company.

Before: BORRELLO, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM. This appeal involves a priority dispute among three automobile insurance companies. In 2007, plaintiffs John and Vera-Anne Corwin sustained severe

injuries in a car accident while driving a 2007 Jeep Compass that John leased from defendant Chrysler LLC[1] and insured through defendant DaimlerChrysler Insurance Company[2] (Chrysler Insurance). The Corwins also owned two other motor vehicles: one insured by plaintiff Auto Club Insurance Association (Auto Club) and the other by defendant Foremost Insurance Company (Foremost). Auto Club and Foremost have paid the Corwins' personal injury protection (PIP) benefits at the time of this appeal. Chrysler Insurance insists that it does not share this responsibility because Chrysler LLC and its United States subsidiaries, rather than the Corwins, are the named insureds in the insurance policy for the Jeep Compass, and the policy states that Chrysler Insurance is not responsible for PIP benefits if the Corwins are entitled to PIP benefits as the named insureds in another policy. The trial court agreed and granted summary disposition in Chrysler Insurance's favor.

Michigan law requires that the named insured in an automobile insurance policy have an insurable interest. Moreover, a motor-vehicle insurer cannot avoid or shift its statutory primary responsibility for PIP benefits. We conclude that Chrysler LLC and its United States subsidiaries do not have an insurable interest as required by Michigan law and that the Chrysler Insurance policy contravenes the no-fault act by enabling Chrysler Insurance to avoid and shift its statutory responsibility for its share of the Corwins' PIP benefits. Thus, we reform the Chrysler Insurance policy to comply with Michigan law by including both John and

---

[1] Chrysler LLC was known as DaimlerChrysler Corporation at the time.

[2] DaimlerChrysler Insurance Company recently changed its name to CorePoint Insurance Company.

Vera-Anne as "named insureds" falling within the policy's definition of "you." We reverse and remand.

### I. FACTS AND PROCEDURAL HISTORY

John and Vera-Anne Corwin are husband and wife and live together in Oakland County. John is a retiree of Chrysler LLC. As a retiree, John qualified for a Chrysler vehicle lease program. Through the program, John leased a 2007 Jeep Compass from Chrysler LLC beginning in June 2007. The term of the lease was for two years. Chrysler Insurance insured the Jeep Compass under a fronted insurance policy.[3] Chrysler LLC never gave John an option of purchasing insurance with another automobile insurer. When John received the Jeep Compass, he received a certificate of insurance; however, John was not the named insured on the certificate. John never received a copy of the insurance policy or a title for the vehicle. However, John did receive a "lease vehicle terms and conditions manual." John had a monthly lease fee of about $300 that was deducted from his pension check. The terms and conditions manual provided that the monthly fee "covered all expenses related to the [Jeep Compass] including insurance" that was "required by the state." John was never informed what portion of his monthly payment was for the insurance.

The Chrysler Insurance policy declarations page and endorsements IL-A and IL-B provide that Daimler-

---

[3] Fronting is "[t]he use of an insurer to issue paper—that is, an insurance policy—on behalf of a self-insured organization . . . without the intention of bearing any of the risk. The risk of loss is transferred back to the self-insured . . . with an indemnity or reinsurance agreement." Int'l Risk Mgt Institute, Inc, Glossary of Insurance & Risk Management Terms <http://www.irmi.com/online/insurance-glossary/terms/f/fronting.aspx> (accessed March 19, 2012).

Chrysler Corporation and its United States subsidiaries are the "named insured" for the Jeep Compass. The policy defines "you" as "the Named Insured shown in the Declarations" and "us" as "the Company providing this Insurance." The Chrysler Insurance policy states the following with respect to coverage: "We will pay personal injury protection [PIP] benefits to or for an 'insured' who sustains 'bodily injury' caused by an 'accident' and resulting from the ownership, maintenance or use of an 'auto' as an 'auto'." The policy defines an "insured" as follows:

**B. Who Is An Insured**

1. You or any "family member".

2. Anyone else who sustains "bodily injury":

a. While "occupying" a covered "auto", or

b. As the result of an "accident" involving any other "auto" operated by you or a "family member" if that "auto" is a covered "auto" under the policy's Liability Coverage, or

c. While not "occupying" any "auto" as a result of an "accident" involving a covered "auto".

The policy contains the following exclusion:

**C. Exclusions**

We will not pay personal injury protection benefits for "bodily injury":

\* \* \*

**6.** To anyone entitled to Michigan no-fault benefits as a Named Insured under another policy. This exclusion does not apply to you or anyone "occupying" a motorcycle.

On August 5, 2007, John was driving the Jeep Compass. Vera-Anne and the Corwins' daughter, Gail, were seated in passenger seats. As John drove through an intersection on a green light, a vehicle driven by defendant Leslie Ann Jackson drove through on a red

light and struck the Jeep Compass "almost completely in the driver's door." Jackson was an uninsured motorist at the time of the accident. Both John and Vera-Anne sustained severe injuries.

At the time of the accident, the Corwins owned a Jeep Liberty that was insured with Auto Club under a Michigan no-fault insurance policy. John and Vera-Anne were the "named insureds" under the policy. The Corwins also owned a motor home. The motor home was insured by Foremost. John was the "named insured" under the policy. After the accident, Auto Club provided the Corwins "hundreds of thousands of dollars" in PIP benefits. But, neither Foremost nor Chrysler Insurance paid the Corwins PIP benefits before this action was initiated.

The Corwins and Auto Club sued Chrysler Insurance, Chrysler LLC, Foremost, and Jackson. The Corwins and Auto Club requested a declaratory judgment regarding the parties' obligations to pay PIP benefits, Auto Club's right to reimbursement from defendants, and the Corwins' right to uninsured-motorist coverage under their three insurance policies. The Corwins and Auto Club also pleaded a single count of negligence against Jackson. Chrysler Insurance and Chrysler LLC filed a counterclaim against the Corwins and Auto Club and moved for summary disposition under MCR 2.116(C)(10). It argued that Auto Club and Foremost had coequal priority to pay the Corwins' PIP benefits because John was a named insured on both the Auto Club and Foremost policies but not the Chrysler Insurance policy. Chrysler Insurance also argued that the Corwins could not recover uninsured-motorist benefits from Chrysler Insurance because the Chrysler Insurance policy did not provide uninsured-motorist coverage at the time of the accident. Auto Club and Foremost

moved for partial summary disposition under MCR 2.116(C)(10). They argued that Chrysler Insurance, Auto Club, and Foremost shared the liability for the Corwins' PIP benefits because (1) the Corwins were the named insureds on the Auto Club and Foremost policies and (2) the Chrysler Insurance policy should be reformed by the court to name the Corwins as the named insureds because the policy improperly shifted Chrysler Insurance's statutory responsibility for the Corwins' PIP benefits to Foremost and Auto Club.

Without hearing oral argument on the parties' motions for summary disposition, the trial court issued an opinion and order on July 1, 2010. The trial court granted Chrysler Insurance's motion for summary disposition and denied Auto Club's and Foremost's motion for summary disposition. The court opined as follows, in pertinent part:

> ACIA [Auto Club Insurance Corporation] and Foremost find themselves in a legal quandary in that the fundamental reality is that DCIC [sic] is the "named insured" on its own policy. This Court believes the law does not permit the interpretation of the No-Fault Act proposed by ACIA and Foremost. The DCIC policy is a "fronting policy" which ACIA and Foremost ask this Court to declare illegal . . . . This Court is asked to "close the loophole" created by the DCIC policy; this is something that this Court cannot do. Absent a directive from a higher authority, this Court cannot find the DCIC policy is illegal or should be interpreted a different way. This Court cannot engage in legislative functions as the proper role of the judiciary is to interpret and not write the law. *State Farm [Fire] and Cas Co v. Old Republic Ins. Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

> As discussed *supra*, the Corwins were not the "named insured" on [the] DCIC policy, but they were the "named insured" on the ACIA and Foremost policies. MCL 500.3114 specifically refers to the person named in the

policy. It has been held that "the person named in the policy" as used in the No Fault Act, is synonymous with the term "named insured." *Cvengros v. Farm Bureau Ins*, 216 Mich App 261, 264; 548 NW2d 698 (1996). Based on the principles of statutory interpretation discussed *supra*, this Court finds that ACIA and Foremost are co-equals in the highest order of priority.

. . . As it relates to the Uninsured/Underinsured Motorist Benefits claims relative to the Corwins, this Court finds there is no genuine issue of fact that the DCIC policy provided no such coverage under the policy for Michigan vehicles at the time of the accident.

Auto Club moved for reconsideration. The court granted the motion in part "to correct a clerical error," i.e., to amend its July 1, 2010, opinion and order to reflect that Auto Club's motion for summary disposition was granted in part to the extent that Auto Club and Foremost were coequals in the highest order of priority.

The trial court entered an order of judgment (a partial consent judgment, because, by that time, Auto Club and Foremost had reached a settlement that they were in the same order of priority for purposes of the Corwins' PIP benefits and Foremost had paid Auto Club $313,655.73 in settlement of the past and present PIP benefits Auto Club had paid the Corwins) on December 16, 2010, in favor of Auto Club against Foremost for $313,655.73. It dismissed with prejudice the Corwins' claims for uninsured-motorist benefits. And, it noted that the Corwins, Auto Club, and Foremost preserved "their continued objection" to the court's summary-disposition rulings and their right to appeal the issue of Chrysler Insurance's liability for PIP benefits.[4]

---

[4] In a footnote, the court stated that "[a]ny claim by Plaintiffs against Defendant Chrysler LLC has been resolved by Bankruptcy Court pro-

## II. ANALYSIS

Auto Club and Foremost argue that the trial court erroneously granted summary disposition in favor of Chrysler Insurance. They contend that the Chrysler Insurance policy violates public policy and, thus, should be reformed. We agree.

### A. STANDARD OF REVIEW

We review a trial court's summary-disposition ruling de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion brought under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties in a light most favorable to the nonmoving party. *The Cadle Co v City of Kentwood*, 285 Mich App 240, 247; 776 NW2d 145 (2009). A motion for summary disposition under MCR 2.116(C)(10) may be granted when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Campbell v Dep't of Human Servs*, 286 Mich App 230, 235; 780 NW2d 586 (2009).

Issues of statutory construction are questions of law, which we review de novo. *Megee v Carmine*, 290 Mich App 551, 559; 802 NW2d 669 (2010). "The interpretation and construction of insurance contracts are also questions of law, which this Court reviews de novo." *Citizens Ins Co v Secura Ins*, 279 Mich App 69, 72; 755 NW2d 563 (2008). Finally, we review "de novo a trial court's decision whether to grant equitable relief." *Walker v Farmers Ins Exch*, 226 Mich App 75, 79; 572 NW2d 17 (1997).

---

ceedings, and there is no claim by Plaintiffs against Defendant Leslie Ann Jackson because [Jackson] was never served with Plaintiffs' Complaint."

B. CHRYSLER INSURANCE'S PRIORITY WHEN CHRYSLER LLC AND ITS UNITED STATES SUBSIDIARIES ARE THE NAMED INSUREDS

"The Michigan no-fault act, MCL 500.3101 *et seq.*, requires Michigan drivers to maintain automobile insurance." *American Home Assurance Co v Mich Catastrophic Claims Ass'n*, 288 Mich App 706, 717; 795 NW2d 172 (2010). MCL 500.3101(1) provides that the "owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance."

Under the no-fault act, an "owner" means any of the following:

> (*i*) A person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days.
>
> (*ii*) A person who holds the legal title to a vehicle, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days.
>
> (*iii*) A person who has the immediate right of possession of a motor vehicle under an installment sale contract. [MCL 500.3101(2)(h).]

"An insurer who elects to provide automobile insurance is liable to pay no-fault benefits subject to the provisions of the [no-fault] act." *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 530; 740 NW2d 503 (2007), citing MCL 500.3105(1).

When determining the priority of insurers liable for no-fault PIP benefits, courts must examine MCL 500.3114. See *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 30; 800 NW2d 93 (2010). MCL 500.3114(1) provides that "a personal protection insur-

ance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." The phrase "the person named in the policy" is synonymous with the term "the named insured." *Cvengros v Farm Bureau Ins*, 216 Mich App 261, 264; 548 NW2d 698 (1996) (quotation marks and citation omitted). Moreover, MCL 500.3114(1) states the following:

> When personal protection insurance benefits . . . are payable to or for the benefit of an injured person under his or her own policy and would also be payable under the policy of his or her spouse, relative, or relative's spouse, the injured person's insurer shall pay all of the benefits and is not entitled to recoupment from the other insurer.

"These provisions have been interpreted as providing that no-fault insurance policies for the injured person's household are first in order of priority of responsibility for payment of no-fault benefits . . . ." *Dobbelaere*, 275 Mich App at 530. Therefore, "a person who sustains accidental bodily injury while the occupant of a motor vehicle must first look to no-fault insurance policies within his or her household for no-fault PIP benefits." *Id.* A no-fault insurance carrier can be responsible for PIP benefits even if the motor vehicle it insures was not the actual motor vehicle involved in the accident. See *Detroit Auto Inter-Ins Exch v Home Ins Co*, 428 Mich 43, 48-49; 405 NW2d 85 (1987). "PIP coverage protects the person, not the motor vehicle." *Amerisure Ins Co v Auto-Owners Ins Co*, 262 Mich App 10, 17; 684 NW2d 391 (2004) (quotation marks and citation omitted). When two or more insurers are in the same order of priority to provide PIP benefits, "an insurer paying benefits due is entitled to partial recoupment from the

other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the expense of processing the claim, in order to accomplish equitable distribution of the loss among such insurers." MCL 500.3115(2).

In this case, the parties correctly agree that, absent reformation of the Chrysler Insurance policy, Chrysler Insurance is not primarily liable for the Corwins' PIP benefits under MCL 500.3114(1). This is because both John and Vera-Anne are a named insured on a no-fault policy in their household, John on the Auto Club and Foremost policies and Vera-Anne on the Auto Club policy, and neither John nor Vera-Anne is a named insured on the Chrysler Insurance policy. Moreover, an exclusion in the Chrysler Insurance policy provides that Chrysler Insurance does not have to pay the Corwins' PIP benefits when the Corwins are "entitled to Michigan no-fault benefits as a Named Insured under another policy."

The critical issues in this case are whether the Chrysler Insurance policy complies with the no-fault act and, if not, whether the policy must be reformed.

### C. VALIDITY OF THE CHRYSLER INSURANCE POLICY UNDER THE NO-FAULT ACT AND GROUNDS FOR REFORMATION

It is a "bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent . . . a contract in violation of law or public policy." *Rory v Continental Ins Co*, 473 Mich 457, 469; 703 NW2d 23 (2005) (quotation marks and citation omitted). "Reformation of an insurance policy is an equitable remedy." *Titan Ins Co v Hyten*, 291 Mich App 445, 451; 805 NW2d 503 (2011), lv gtd 490 Mich 868 (2011) (quotation marks and citation omitted). "[A] policy in

full effect may be reformed." *Id.* "[C]ontracting parties are assumed to want their contract to be valid and enforceable." *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 599; 648 NW2d 591 (2002). Thus, when reasonably possible, this Court is obligated to construe insurance contracts that conflict with the no-fault act and, thus, violate public policy, in a manner that renders them "compatible with the existing public policy as reflected in the no-fault act." *Id.*; see also *State Farm Mut Auto Ins Co v Enterprise Leasing Co*, 452 Mich 25, 40-41; 549 NW2d 345 (1996) (reforming an invalid no-fault policy to comply with the no-fault act when the policy improperly shifted statutory responsibility for providing no-fault coverage); *Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225, 238; 531 NW2d 138 (1995) (reforming an invalid no-fault policy to provide coverage required by the no-fault act).

We conclude that the Chrysler Insurance policy is invalid under the no-fault act and requires reformation for two reasons: (1) Chrysler LLC and its United States subsidiaries, the named insureds in the policy, do not have an insurable interest and (2) the policy contravenes the legislative intent of the no-fault act.

### 1. INSURABLE INTEREST

" '[U]nder Michigan law, an insured must have an "insurable interest" to support the existence of a valid automobile liability insurance policy.' " *Morrison v Secura Ins*, 286 Mich App 569, 572; 781 NW2d 151 (2009), quoting *Allstate Ins Co v State Farm Mut Auto Ins Co*, 230 Mich App 434, 439; 584 NW2d 355 (1998). And, "the insurable interest must be that of a 'named insured.' " *Id.*, quoting *Allstate*, 230 Mich App at 440. "[A]n 'insurable interest' need not be in the nature of ownership, but rather can be any kind of benefit from

the thing so insured or any kind of loss that would be suffered by its damage or destruction." *Id.* at 572-573. An individual can have an insurable interest in a motor vehicle without having title to the vehicle. See *Clevenger v Allstate Ins Co*, 443 Mich 646, 661-662; 505 NW2d 553 (1993). For example, "[a] person obviously has an insurable interest in his own health and well-being. This is the insurable interest which entitles persons to personal protection benefits regardless of whether a covered vehicle is involved." *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339, 362; 764 NW2d 304 (2009) (quotation marks and citation omitted). "[T]he 'insurable interest' requirement arises out of long-standing public policy." *Morrison*, 286 Mich App at 572, citing *Allstate*, 230 Mich App at 438. "[P]ublic policy forbids the *issuance* of an insurance policy where the insured lacks an insurable interest." *Id.* at 573 (emphasis in original). A policy is void when there is not an insurable interest. *Id.* at 572; see also *Allstate*, 230 Mich App at 441.

Here, neither Chrysler LLC nor its United States subsidiaries have an insurable interest to support the existence of the Chrysler Insurance policy for personal protection, property protection, and residual liability insurance. Owners and registrants have an insurable interest in their motor vehicles because the no-fault act requires owners and registrants to carry no-fault insurance and MCL 500.3102(2) makes it a misdemeanor to fail to do so. See *Clevenger*, 443 Mich at 651, 661. The insurable interest of owners and registrants is, therefore, contingent upon "personal pecuniary damage created by the no-fault statute itself." *Id.* at 661. As Chrysler Insurance conceded during oral argument, Chrysler LLC and its United States subsidiaries are not owners or registrants of the Jeep Compass leased to the Corwins. MCL 500.3101(2)(h)(*ii*) and (i) expressly ex-

clude "a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days" from being either an owner or registrant. Thus, Chrysler LLC cannot be an owner or registrant of the Jeep Compass. Moreover, there is no evidence in the record indicating that a United States subsidiary of Chrysler LLC was an owner or registrant of the Jeep Compass. Therefore, Chrysler LLC and its United States subsidiaries do not have an insurable interest contingent upon "personal pecuniary damage created by the no-fault statute itself." See *Clevenger*, 443 Mich at 661.

Furthermore, Chrysler LLC and its United States subsidiaries lack any insurable interest flowing from protection of a person's "health and well-being" because they cannot suffer accidental bodily injury. See MCL 500.3114(1); *Roberts*, 282 Mich App at 362. Chrysler LLC and its United States subsidiaries also do not have an insurable interest entitling them to residual liability or property protection insurance. Residual liability insurance affords coverage for noneconomic loss caused by the "ownership, maintenance, or use of a motor vehicle . . . ." MCL 500.3135; see also *Citizens*, 448 Mich at 228-229. The owner or registrant of a motor vehicle has the primary duty to provide residual liability insurance. *Citizens*, 448 Mich at 235. "Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3121(1). A person claims property protection insurance benefits in the following order of priority: (1) insurers of owners or registrants of vehicles involved in the accident and (2) insurers of operators of

vehicles involved in the accident. MCL 500.3125. As previously discussed, Chrysler LLC and its United States subsidiaries are not owners or registrants of the Jeep Compass. Furthermore, they do not maintain, operate, or use the Jeep Compass to give rise to liability for residual liability or property protection insurance benefits. Chrysler LLC and its United States subsidiaries do not derive "any kind of benefit from [a] thing so insured" nor do they suffer "any kind of loss that would be suffered by its damage or destruction." See *Morrison*, 286 Mich App at 573.

Because Chrysler LLC and its United States subsidiaries do not have an insurable interest as the named insured in the Chrysler Insurance policy, the policy violates public policy. See *id.* at 572-573. Indeed, the entire policy is void—leaving John, the owner of the Jeep Compass, in violation of his statutory duty to maintain security for the payment of insurance benefits. See *id.* at 572; MCL 500.3101(1), (2)(h). The Chrysler Insurance policy must be reformed to be compatible with public policy so that there is an insurable interest belonging to the named insured. See *Morrison*, 286 Mich App at 572 (insurable interest must belong to the named insured); *Cruz*, 466 Mich at 599 (parties are assumed to want their contract to be valid); see also *Enterprise Leasing*, 452 Mich at 40-41 (reforming a no-fault policy to comply with the no-fault act when the policy improperly shifted statutory responsibility for providing no-fault coverage).

### 2. LEGISLATIVE INTENT

"Insurance policies are . . . subject to statutory regulation, and mandatory statutory provisions must be read into them." *Auto-Owners Ins Co v Martin*, 284

Mich App 427, 434; 773 NW2d 29 (2009). "Insurance policy provisions that conflict with statutes are invalid . . . ." *Id.*

In *Enterprise Leasing*, the Michigan Supreme Court held that a provision in a car rental agreement that shifted the primary responsibility of the vehicle owner to provide no-fault coverage was void. *Enterprise Leasing*, 452 Mich at 27. The three cases in *Enterprise Leasing* involved three rental agreements; each agreement provided that the renter and not the owner of the rented motor vehicle would provide all automobile insurance. *Id.* at 28-30. Each of the three renters was involved in a motor-vehicle accident while driving the rented motor vehicle; the accidents resulted in lawsuits for residual liability benefits. *Id.* The Court concluded that the provisions in the three rental agreements that shifted the responsibility for providing primary residual liability coverage from the owner to both the driver and the driver's insurer were void. *Id.* at 27. The Court explained that "it is the *'owner* or *registrant* of a motor vehicle'* who must provide residual liability insurance under the [no-fault] act." *Id.* at 31-32, quoting *Citizens*, 448 Mich at 228, quoting MCL 500.3101(1) (emphasis in *Citizens*). Our Supreme Court stated that it "would not allow the rental car companies to avoid the Legislature's intent that a vehicle owner be primarily responsible for providing coverage." *Id.* at 36. Thus, the Court held that "the car rental companies and their insurers [were] required to provide primary residual liability coverage for the permissive use of the rental cars, up to their policy limits or the minimum required by statute." *Id.*

The Michigan Supreme Court has explained that, in enacting MCL 500.3114 and MCL 500.3115,

the Legislature, in its broader purpose, intended to provide benefits whenever, as a general proposition, an insured is injured in a motor vehicle accident, whether or not a registered or covered motor vehicle is involved; and in its narrower purpose intended that an injured person's personal insurer stand *primarily* liable for such benefits whether or not its policy covers the motor vehicle involved and even if the involved vehicle is covered by a policy issued by another no-fault insurer. [*Lee v Detroit Auto Inter-Ins Exch*, 412 Mich 505, 515; 315 NW2d 413 (1982) (emphasis added).]

See also *Underhill v Safeco Ins Co*, 407 Mich 175, 191; 284 NW2d 463 (1979) ("It is our understanding of the legislative purpose that it was intended that injured persons who are insured or whose family member is insured for no-fault benefits would have primary resort to their own insurer."). "The 'injured person's personal insurer' is, of course, the insurance company providing no-fault insurance in his household which was purchased by an 'owner or registrant of a motor vehicle.' " *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 697; 671 NW2d 89 (2003) (some quotation marks and citations omitted).

As in *Enterprise Leasing*, the Chrysler Insurance policy in this case violates the intent of the no-fault act by shifting primary liability for no-fault coverage. More specifically, the policy contravenes the legislative intent of MCL 500.3114 and MCL 500.3115 of the no-fault act because the policy enables Chrysler Insurance to avoid primary liability for PIP benefits that are payable to injured people that Chrysler Insurance personally insures, i.e., the Corwins. See *Lee*, 412 Mich at 515. Under the no-fault act, John is the "owner" of the Jeep Compass leased from Chrysler LLC because John leased the Jeep Compass for more than 30 days. See MCL 500.3101(2)(h)(*i*). Moreover, John purchased no-fault

insurance for the Jeep Compass through Chrysler Insurance because the insurance premium was deducted from his monthly pension checks. Thus, Chrysler Insurance provided no-fault insurance to the Corwin household and was the Corwins' "personal insurer." See *Farmers Ins Exch*, 256 Mich App at 697. Nevertheless, under the terms of its insurance policy, Chrysler Insurance avoids primary liability under MCL 500.3114. As previously discussed, Chrysler LLC and its United States subsidiaries are the named insureds under the Chrysler Insurance policy. Thus, Chrysler Insurance avoids primary liability for PIP benefits under MCL 500.3114 whenever the Corwins are a named insured in another no-fault policy in their household. Essentially, the Chrysler Insurance policy's designation of Chrysler LLC and its United States subsidiaries as the named insureds is a coordination-of-benefits clause in disguise. The Chrysler Insurance policy relegates motor-vehicle owners to contingent beneficiaries as permissive users on their own insurance policies.

We will not allow Chrysler Insurance to avoid the Legislature's intent that an injured person's personal insurer stand *primarily* liable for PIP benefits. See *Lee*, 412 Mich at 515; *Enterprise Leasing*, 452 Mich at 36. The Chrysler Insurance policy must be reformed to be "compatible with the existing public policy as reflected in the no-fault act." See *Cruz*, 466 Mich at 599; see also *Enterprise Leasing*, 452 Mich at 40-41 (reforming a car rental agreement to comply with the no-fault act when the agreement improperly shifted statutory responsibility for providing no-fault coverage). Consistent with the intent of the Legislature, we must reform the policy so that Chrysler Insurance is primarily liable (along with Auto Club and Foremost) for PIP benefits in accordance with MCL 500.3114(1).

### D. REFORMATION OF THE NAMED INSURED AND THE PRIORITY IMPLICATIONS UNDER MCL 500.3114(1)

We conclude that the Chrysler Insurance policy must be reformed to include both John and Vera-Anne as "named insureds" who fall within the policy's definition of "you." In this case, John qualified for the lease program as a Chrysler LLC retiree, and the insurance premiums for the Jeep Compass were deducted from his pension. Moreover, the Chrysler defendants pleaded the following in their answer in response to the allegation in Auto Club and the Corwins' complaint that *the Corwins* had an insurance policy with Chrysler Insurance for the Jeep Compass at the time of the accident: "These Defendants plead No Contest that at the time of the collision, *the Corwins* had a policy of insurance issued by DCIC." (Emphasis added.)

The liability of Auto Club, Foremost, and Chrysler Insurance for John's and Vera-Anne's PIP benefits is governed by MCL 500.3114(1). As previously discussed, MCL 500.3114(1) states the following:

> Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. A personal injury insurance policy described in [MCL 500.3103(2)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motorcycle accident. *When personal protection insurance benefits* or personal injury benefits described in [MCL 500.3103(2)] *are payable to or for the benefit of an injured person under his or her own policy and would also be payable under the policy of his or her spouse, relative, or relative's spouse, the injured person's insurer shall pay all*

*of the benefits and is not entitled to recoupment from the
other insurer.* [MCL 500.3114(1) (emphasis added).]

In *Detroit Auto*, the Michigan Supreme Court dis-
cussed the proper application of MCL 500.3114(1). See
*Detroit Auto*, 428 Mich at 47-48. In that case, Vernon
Piche died in a motor-vehicle accident while driving his
wife Patricia's 1977 Mercury Cougar. *Id.* at 44. Vernon
and Patricia lived together at the time of the accident.
*Id.* Vernon and Patricia had six motor vehicles in their
household (several of which were driven by their chil-
dren). *Id.* All the vehicles were insured by either Detroit
Automobile Inter-Insurance Exchange (DAIIE) or
Home Insurance Company (Home Insurance). See *id.* at
44 n 3. The owners, insurers, named insureds, and
principal drivers for each vehicle were as follows:

| Vehicle | Insurer | Owner | Named Insured | Other Named Insured | Principal Driver |
|---------|---------|-------|---------------|---------------------|------------------|
| 1977 Mercury Cougar | DAIIE | Patricia | Patricia | Vernon[5] | Patricia |
| 1969 Chevrolet stake truck | Home | Vernon | Vernon | | Vernon |
| 1971 Ford pickup truck | DAIIE | Patricia | Patricia | Vernon[6] | Vernon |
| 1973 Ford Mustang | DAIIE | Patricia | Patricia | | Paul |
| 1973 Pontiac Catalina | DAIIE | Patricia | Peter | Patricia | Peter |
| 1975 Plymouth Fury | DAIIE | Vernon | Steven | Vernon | Steven |

[5] Although Vernon was not listed as a named insured for the Mercury
Cougar, the DAIIE insurance policy for the Mercury Cougar included the
named insured's spouse within the definition of "named insured." *Detroit
Auto*, 428 Mich at 48 n 12. Thus, Vernon was a named insured for the
Mercury Cougar.

[6] In *Detroit Auto*, DAIIE conceded that a person listed as a "principal
driver" in its policies was a "named insured." *Detroit Auto*, 428 Mich at
45 n 4. Thus, although not listed as a named insured, Vernon was a
named insured on the DAIIE policy for the Ford pickup truck. *Id.*

In analyzing whether DAIIE, Home Insurance, or both were responsible for paying Vernon's PIP benefits, the Court recognized that MCL 500.3114(1)[7] applied. *Detroit Auto*, 428 Mich at 47. The Court concluded that both DAIIE and Home Insurance were of equal priority for Vernon's PIP benefits, opining as follows, in pertinent part:

> The first sentence of [MCL 500.3114(1)] provides that Vernon Piche was covered by the insurance policy that DAIIE issued to his wife, Patricia Piche, as owner of the 1977 Mercury Cougar. Thus he could collect under either policy. The second sentence of [MCL 500.3114(1)] then gives the answer to the present dispute: Since benefits would be payable by either the insurer(s) of the injured person (Vernon Piche), or the insurer of the injured person's spouse (Patricia Piche), the benefits are to be paid by the insurer(s) of Vernon Piche.

> Since DAIIE and Home Insurance each had issued a policy that named Vernon Piche as an insured operator, these two insurers are of equal priority. [*Id.* at 47-48.]

Under *Detroit Auto*, Auto Club, Foremost, and Chrysler Insurance are of equal priority for John's PIP benefits because John is a named insured on their policies. However, because Vera-Anne is a named insured on only the Auto Club and Chrysler Insurance

---

[7] In *Detroit Auto*, MCL 500.3114(1) did not include the present language regarding MCL 500.3103(2). Rather, MCL 500.3114(1) read as follows:

Except as provided in subsections (2) and (3), a personal protection insurance policy applies to accidental bodily injury to the person named in the policy, his spouse, and a relative of either domiciled in the same household. When personal protection insurance benefits are payable to or for the benefit of an injured person under his own policy and would also be payable under the policy of his spouse, relative, or relative's spouse, the injured person's insurer shall pay all of the benefits and shall not be entitled to recoupment from the other insurer. [*Detroit Auto*, 428 Mich at 47.]

policies, Auto Club and Chrysler Insurance are primarily liable for Vera-Anne's PIP benefits, but Foremost is not. PIP benefits are payable to Vera-Anne under her own Auto Club and Chrysler Insurance policies, and, although they would also be payable to Vera-Anne under her spouse's policy with Foremost, Vera-Anne's insurers (Auto Club and Chrysler Insurance) must pay all her PIP benefits pursuant to MCL 500.3114(1). See *Detroit Auto* at 47-48; MCL 500.3114(1).

Accordingly, upon reformation, Auto Club, Foremost, and Chrysler Insurance are equally liable for John's PIP benefits. Auto Club and Chrysler Insurance are equally liable for Vera-Anne's PIP benefits. We remand to the trial court to determine the amount of each insurer's liability and to order the appropriate reimbursement under MCL 500.3115(2).

Reversed and remanded. We do not retain jurisdiction.

BORRELLO, P.J., and BECKERING and GLEICHER, JJ., concurred.